No. 25-6138

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

THE BABYLON BEE, *et al*.,
*Plaintiffs-Appellees*,

v.

ROB BONTA, in His Official Capacity as
Attorney General of the State of California, *et al*.,
*Defendants-Appellants*.

---

## On Appeal from the United States District Court
## for the Eastern District of California
No. 2:24-cv-02527-JAM-CKD
The Honorable John A. Mendez

---

## DEFENDANTS' REPLY BRIEF ON THE MERITS

---

ROB BONTA
  *Attorney General of California*
THOMAS S. PATTERSON
  *Senior Assistant Attorney General*
ANYA M. BINSACCA
  *Supervising Deputy Attorney General*
KRISTIN A. LISKA
  *Deputy Attorney General*
STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
600 West Broadway, Suite 1800
San Diego, CA 92101
Telephone: (619) 321-5878
Fax: (916) 732-7920
Kristin.Liska@doj.ca.gov
*Attorneys for Defendants-Appellants*

May 11, 2026

## TABLE OF CONTENTS

**Page**

Introduction ....................................................................................................1

Argument ........................................................................................................3

I.      Section 230(c) Does Not Preempt AB 2655 .......................................3

      A.     AB 2655 is not preempted by section 230(c)(1) .......................3

      B.     AB 2655 is not preempted by section 230(c)(2)(B) ................18

II.     This Court Should Not Affirm On Alternative Bases .......................19

Conclusion ....................................................................................................22

Certificate of Compliance ............................................................................23

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Barnes v. Yahoo!, Inc.*
570 F.3d 1096,1107 (9th Cir. 2009)......................................................................*passim*

*Calise v. Meta Platforms, Inc.*
103 F.4th 732 (9th Cir. 2024)..............................................................................*passim*

*CoreCivic, Inc. v. Candide Grp., LLP*
46 F.4th 1136 (9th Cir. 2022)........................................................................20

*Davis v. Nordstrom, Inc.*
775 F.3d 1089 (9th Cir. 2014)......................................................................21

*Dep't of Fish & Game v Fed. Subsistence Bd.*
62 F.4th 1177 (9th Cir. 2023)........................................................................20

*Doe 1 v. Twitter, Inc.*
148 F.4th 635 (9th Cir. 2025)........................................................9, 10, 11, 13

*Estate of Bride by & through Bride v. Yolo Techs., Inc.*
112 F.4th 1168 (9th Cir. 2024)..................................................................3, 15

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*
521 F.3d 1157 (9th Cir. 2008)....................................................................17, 21

*Merritt v. Countrywide Fin. Corp.*
759 F.3d 1023 (9th Cir. 2014)......................................................................21

*MetroPCS California, LLC v. Picker*
970 F.3d 1106 (9th Cir. 2020)........................................................................20

*Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Human Servs.*
946 F.3d 1100 (9th Cir. 2020)....................................................................19, 20

*Shirk v. U.S. ex rel. Dep't of Interior*
773 F.3d 999 (9th Cir. 2014)......................................................................19, 20

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*York County on Behalf of County of York Ret. Fund v. HP, Inc.*
65 F.4th 459 (9th Cir. 2023) ..................................................................20

STATUTES

United States Code, Title 47
§ 230(c)(1) ...............................................................................*passim*
§ 230(c)(2) .........................................................................................18
§ 230(c)(2)(B) ....................................................................................18

California Elections Code
§ 20512(i)(1) ........................................................................................6
§ 20513(a) .............................................................................................5
§ 20513(a)(2) ........................................................................................7
§ 20513(a)(3) ........................................................................................7
§ 20514(a)(1) ........................................................................................7
§ 20514(a)(2) .....................................................................................7, 8
§ 20514(e) .............................................................................................8
§ 20511 ...............................................................................................17

OTHER AUTHORITIES

Assembly Bill 502 (2025-2026) ..........................................................21

"Authentic," Merriam-Webster Dictionary, https://www.merriam-
webster.com/dictionary/authentic ....................................................6

"Authenticate," Black's Law Dictionary (12th ed. 2024) .........................6

"Record," Black's Law Dictionary (12th ed. 2024) ...............................6

"Record," Merriam-Webster Dictionary, https://www.merriam-
webster.com/dictionary/recorded ....................................................6

**INTRODUCTION**

This appeal presents a novel and important question regarding the scope of preemption under the Communications Decency Act and a State's power to regulate content online. According to plaintiffs, section 230(c) of the Communications Decency Act renders States utterly powerless to regulate the content of online internet platforms—no matter how dangerous, deadly, or even illegal such content is. Of course, whether a State should require platforms to remove specific content is a hotly contested issue in society. Reasonable minds can and do differ on whether a State should prohibit certain content on online platforms. And the First Amendment plays a critical role in such debates, given the limitations it imposes on a State's power to regulate speech. But this case is not about whether, as a policy matter, California should prohibit certain political deepfakes on online platforms around state elections. Nor is it (at this juncture) about whether the First Amendment prohibits California from doing so. Instead, this appeal is about whether, via section 230(c), Congress has stripped California of the authority to do so altogether.

Section 230(c) does not deprive the States of their traditional authority to regulate the content of online platforms within the limits of the First Amendment. States have long had authority to regulate the content disseminated by others within their borders—such as prohibiting the sale of obscene materials to children,

1

advertisements for illegal goods or services, or publications with classified national secrets. Neither the text nor legislative history of section 230(c) indicates any congressional intent to remove this longstanding aspect of the States' police power. On the contrary, section 230(c) was meant to alleviate concerns about the proliferation of problematic content online by empowering platforms to engage in voluntary content moderation without fears of incurring liability for doing so. Eliminating the State's power to also address the proliferation of problematic content online would stand in tension with these congressional aims.

In response to the State's arguments, plaintiffs contend that Assembly Bill 2655 is preempted by section 230(c) because it requires platforms to engage in "traditional publishing activities" by removing or labeling specific content. But this argument misses the mark. Whether section 230(c) preempts a state statute turns on the source of the duty created by the statute. AB 2655's obligations apply to a platform because it hosts third-party content, not because of any status as a publisher. Nor does AB 2655 necessarily require online platforms to monitor third-party content.

Finally, plaintiffs and their amici have no response to the State's argument that their interpretation of section 230(c) would bind the State's hands when it comes to regulating content online. Under plaintiffs' interpretation, the State would not be permitted to require platforms remove advertisements for murder-for-

2

hire, videos of child sex abuse, or instructions to 3D print working military-grade weapons. If Congress had intended such a dramatic limitation on the State's police power, it would surely have said as much. It did not. At the end of the day, whatever the merits of AB 2655 as a policy matter—or under the First Amendment, which this Court should not address in the first instance—Congress has not precluded California from passing such a statute. AB 2655 is not preempted by section 230(c), and the decision below should be reversed.

## ARGUMENT

### I. SECTION 230(C) DOES NOT PREEMPT AB 2655

At bottom, AB 2655 is a law that seeks to regulate the content available online. Such a law does not run afoul of Section 230(c), either section 230(c)(1) or section 230(c)(2)(B). Plaintiffs' arguments to the contrary are not availing.

### A. AB 2655 is not preempted by section 230(c)(1)

Plaintiffs' central argument is that AB 2655 is preempted by section 230(c)(1), which prohibits a State from treating a platform as a publisher. *See* 47 U.S.C. § 230(c)(1). The parties agree on the framework that this Court uses in analyzing whether a law is preempted by section 230(c)(1). To determine if a law is preempted, this Court undertakes a "close examination of the duty underlying each cause of action to decide if it 'derives from the defendant's status or conduct as a publisher or speaker.'" *Estate of Bride by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1176 (9th Cir. 2024) (quoting *Barnes v. Yahoo!, Inc.*, 570

3

F.3d 1096,1107 (9th Cir. 2009), *as amended*).  This analysis is guided by two inquiries: 1) "what is the 'right' from which the duty springs" and 2) "what is this duty requiring the defendant to do."  *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 742 (9th Cir. 2024).  As defendants argued in their opening brief, AB 2655 is not preempted under either inquiry.  Plaintiffs' arguments to the contrary are not persuasive.

Start with the second prong.  This Court has held that a law is preempted by section 230(c)(1) when the duty it imposes "would 'necessarily require an internet company to monitor third-party content.'"  *Calise*, 103 F.4th at 741 (citation omitted).  As explained in defendants' opening brief, AB 2655 does not require a platform to monitor third-party content.  *See* Defendants' Opening Brief on the Merits (OBM) at 25-31.  Under the common law, a publisher is liable for defamation even if the publisher is unaware of the defamatory nature of the published content.  *See* OBM at 26.  Thus, the only way for a publisher to minimize liability would be to proactively review and vet every potential publication for possible defamation—that is, to actively monitor the third-party content it publishes.  *See id.*  That was precisely the kind of burden imposed in *Calise*: plaintiff's claim that the defendant was unjustly enriched by hosting fraudulent ads would have required the defendant to review every ad to ensure none were fraudulent to avoid liability.  103 F.4th at 744.  So, too, in *Barnes*:

4

plaintiff's claim based on defendant's failure to remove harassing or bullying content would have required the defendant to review all posts to make sure they were not harassing or bullying content. 112 F.4th at 1180. In both *Calise* and *Barnes*, the defendants would have had to monitor third-party content to avoid liability. But AB 2655 does not require a platform to monitor content the way a common-law publisher must or the way the defendants in *Calise* and *Barnes* would have had to; instead, it requires a platform to create a means for users to report content within the scope of the statute and then to review only the reported content. *See* OBM at 25-26.

Plaintiff X Corp.'s arguments (at 48) that AB 2655 nonetheless does require monitoring are not persuasive. In addressing why AB 2655 does not require monitoring third-party content in the manner of a common-law publisher, it may be helpful to walk through the process a platform would follow to comply with the statute's obligation, beginning with the Removal Requirement. First, this requirement does not necessitate any action on a platform's part unless and until a platform receives a report from a user (or is made aware of posted content that is the same as previously removed content). *See* OBM at 25-26 (discussing Cal. Elec. Code § 20513(a)). Once a platform receives a report, it must then determine if the Removal Requirement applies to that content. The first step in doing so is to

5

determine whether the content meets the statutory definition of "materially deceptive content." This requires the platform to ask three questions:

1. Is the reported content audio or visual media?

2. Is the reported content digitally created or modified?

3. Would the reported content falsely appear to a reasonable person to be an authentic record of its contents? (That is, would a reasonable person believe the audio or visual media is an accurate depiction of a real event.[1]) *See* Cal. Elec. Code § 20512(i)(1).

If the answer to all three questions is "yes," then the reported content is "materially deceptive content" potentially subject to AB 2655; if the answer to any of these questions is "no," then the content is not regulated by AB 2655, and the platform need take no further action. Next, the platform would have to determine whether the audio or visual media depicts one of three specific subjects: 1) a

---

[1] *See, e.g.*, "Authentic," Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/authentic (defining "authentic" as "not false or imitation: real, actual," "worthy of acceptance or belief as conforming to or based on fact," "conforming to an original so as to reproduce essential features," and "made or done the same was as an original") (last accessed May 7, 2026); "Authenticate," Black's Law Dictionary (12th ed. 2024) (defining "authenticate" as "[t]o prove the genuineness of (a thing); to show (something) to be true or real"). "Record," Black's Law Dictionary (12th ed. 2024) (defining "record" as "documentary account of past events, usually designed to memorialize those events"); "Record," Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/recorded (defining "record" as "the state or fact of being recorded" or "something that recalls or relates past events") (last accessed May 7, 2026).

6

candidate for office saying or doing something they did not say or do, 2) an elections official saying or doing something in connection with their election-related duties that they did not do or say, or 3) an elected official saying or doing something that influences an election in California that they did not do or say. *See* Cal. Elec. Code § 20513(a)(2). If the reported media does portray one of these three things, then the Removal Requirement may apply; if not, then the Removal Requirement would not apply, and the platform need take no further action. If the reported content does portray one of these three specified subjects, then the platform would need to determine whether the reported content was reasonably likely to cause the specified harm to an election. *See id.* Again, if the answer here is "no," the platform need take no further action. And finally, the platform would need to determine whether it is currently within the relevant temporal window. *See id.* § 20513(a)(3).

Determining whether the Labeling Requirement applies would proceed in much the same way. As with the Removal Requirement, a platform need not take any action unless and until it receives a report from a user. *See* Cal. Elec. Code § 20514(a)(1). Following the report, the platform would first determine whether the reported content meets the statutory definition of "materially deceptive content," as with the Removal Requirement, *see id.* § 20514(a)(2)—if not, then the platform need take no further action. Next, the platform would determine whether

the reported content either 1) depicts one of the three specified subjects within the scope of the Removal Requirement or 2) appears in an election communication or advertisement. *See id.* Finally, the platform would need to determine whether it is currently within the relevant temporal window. *See id.* § 20514(e).

Applying this framework to examples raised by plaintiffs in their briefs underscores how AB 2655 does not require platforms to monitor third-party content. For instance, plaintiff X Corp. references a video posted by the Republican National Committee YouTube channel that "imagined various scenarios that would occur during a second presidential term under Joe Biden." Answering Brief of X Corp. ("X Corp. ABM") at 21-22. A platform would only need to determine if this video is within the scope of AB 2655 if the video is reported to the platform. At that time, the platform would proceed through the questions listed above. Here, the platform could stop at the threshold step; this video would not be subject to AB 2655 because, as a counterfactual and hypothetical, a reasonable person would not understand the video to be an accurate record of actual events. The video would thus not meet the definition of "materially deceptive content."

Or consider the clip of then-candidate JD Vance that plaintiff X Corp. references (at 24). Again, a platform need not do anything with this audio clip unless it receives a report that the clip might be subject to AB 2655. At that time,

8

the platform would review the clip to determine if it is covered by AB 2655. And as with the counterfactual video discussed above, the platform could cease its review at the threshold step: it does not appear (based on X Corp.'s description in its briefing) that the clip has been digitally created or altered (i.e., edited) and the clip would therefore not be "materially deceptive content." Furthermore, the audio clip does not portray a candidate doing or saying something they did not do or say—because Vance indisputably did say what the video portrays him saying. It thus would not come within the scope of AB 2655's Removal Requirement for that reason either.

As the application of the statutory framework to specific examples demonstrates, AB 2655 does not require a platform to proactively monitor third-party posts or to search for content within the scope of AB 2655, in contrast to the common-law publisher seeking to avoid defamation liability or the defendants in *Calise* and *Barnes*, *see* OBM at 25-26, *supra* at 4-5. A platform does not need to "scour its platform for content" within the scope of the Removal or Labeling Requirement to comply with AB 2655. *Doe 1 v. Twitter, Inc.*, 148 F.4th 635, 647 (9th Cir. 2025). Nor can a company be held responsible for failing to label or remove content that *was not reported* to it—in sharp contrast to how a publisher could, at common law, be held liable for defamation even if it did not know the material was defamatory, *see* OBM at 4-5, 26, or how the defendants in *Calise* and

9

*Barnes* arguably could be held liable even if they did not know the nature of the material at issue in those cases. All AB 2655 requires is that a platform provide a means for users to report content within the scope of AB 2655 and to then review the reported content to determine if AB 2655 applies. Those requirements do not necessarily require a platform to monitor third-party content.

Nor is AB 2655 preempted under the other part of this Court's inquiry, the source of the duty. Plaintiffs contend that because AB 2655 requires them to remove or label third party content, it necessarily treats them as a publisher of the third-party content. But the focus of this Court's inquiry is the *source of the duty* imposed by the statute. AB 2655's obligations do not come from a platform's status as a publisher. The statute does not seek to hold a platform liable for the publishing choices it makes or for how a platform has chosen to exercise its editorial discretion—in contrast to cases where this Court has found preemption, *see* OBM at 22-24. Instead, AB 2655 regulates the content available online.

Thus, to accomplish this goal, AB 2655 applies to platforms *because they host third-party content*, not *because they make publishing choices*. And the fact that AB 2655 regulates platforms because they host third-party content is not sufficient for it to be preempted. This Court held as much in *Doe 1*. There, Twitter argued that the duty to report known child sex abuse materials to the National Center for Exploited and Missing Children "arises because its platform

10

allows third parties to upload content," and that section 230(c)(1) thus preempted a claim that Twitter had failed to properly report known child sex abuse materials. *Doe 1*, 148 F.4th at 647. This Court rejected that argument. It noted that it "may well be true" that the law applied to Twitter because it allowed third parties to upload content, "[b]ut that is not the test" for preemption under section 230(c)(1). *Id.* Instead, this Court held that "the duty to report child pornography" was "separate[]" from "Twitter's role as a publisher." *Id.* So, too, here. AB 2655 applies to platforms because they allow third parties to post content, not because they exercise editorial control over such content or otherwise act as a publisher. The statute's obligations exist independently of any platform's role as a publisher and are entirely distinct from a platform's exercise of its own editorial discretion.[2]

That conclusion is not altered by the fact that AB 2655 requires platforms to remove or label specific content. *See* OBM at 26-30. The fact that a platform must remove or label specific content under AB 2655 arises, again, not because the platform is acting as a publisher, but because *it hosts third-party content*. And

---

[2] Thus, defendants do not argue that "Section 230(c)(1) could never immunize liability deriving from a state statute, no matter how directly the statutory claim or statute itself targets publishing conduct." X Corp. ABM at 52 (emphasis removed). Rather, defendants' argument is that AB 2655 imposes obligations on platforms that are *unrelated to* their status as a publisher—and thus the duty to comply with AB 2655 is a statutory obligation similarly unrelated to a platform's status as a publisher.

regulating an entity because it hosts third-party content is not the same as treating that entity as a publisher. Hosting third party content is, after all, not unique to publishers. Distributors, too, host a third-party's speech, just like publishers.[3] What distinguishes publishers and distributors is not whether third-party content is involved; it is whether the person who hosts that third-party content is exercising editorial discretion over the third-party content. *See* OBM at 4-6, 27-28. A neighbor who hangs up a bulletin board for anyone to post on is hosting third-party content. If that neighbor does not review or edit what is posted there, then they are not a publisher even though they are hosting a third-party's content. The same holds true for a newspaper stand or a bookstore: both disseminate third-party content but are not publishers. The State can require a bulletin board host, a newspaper stand owner, or a bookstore clerk to remove specified third-party

_____

[3] Plaintiff X Corp. and plaintiffs' *amici* make much of this Court's case law stating that section 230(c)(1) does not distinguish between distributor and publisher liability. *E.g.*, X Corp. ABM at 19 n.46, X Corp. Rule 28j Letter at 1-2. But defendants do not argue that AB 2655 is not preempted because it only imposes distributor liability. Rather, defendants' argument is that because AB 2655 governs all entities that host third party content and imposes obligations on platforms because they host third party content, the statute does not impose a duty on platforms that stems from their status as a publisher. Defendants cite to examples of distributors and the State's regulation of the third-party content that distributors disseminate to emphasize that hosting third-party content is something that *distributors do too*, underscoring that AB 2655 does not regulate platforms because of their publishing activities. Whether or not section 230(c)(1) preempts distributor liability for defamation as well as publisher liability for defamation is irrelevant to this argument.

content.  *See* OBM at 6 (compiling cases); *see also id.* at 29-30.  Doing so would not somehow transform these distributors into publishers or be regulating them as publishers.  It would be regulating them because they disseminate third-party content.

Where a statute's obligations fall on a platform *because* it is acting as a publisher with respect to the third-party content it hosts, then the statute is regulating that platform as a publisher.  But where a statute's obligations stem only from the fact that a platform hosts third-party content and apply regardless of whether the platform is acting as a publisher with respect to such content, the statute is not regulating the platform as a publisher.  That is true even if the statutory obligations might result in a platform removing or labeling specific content, as AB 2655 does.  Were it otherwise, *any* law that applies to a platform because it hosts third-party content would be preempted.  This Court has repeatedly rejected such a but-for test for preemption under section 230(c)(1).  *See, e.g.*, *Doe 1*, 148 F.4th at 647 (rejecting argument that section 230(c)(1) applies where the "duty arises because [a] platform allows third parties to upload content"); *Calise*, 103 F.4th at 742 (rejecting argument that section 230(c)(1) applies whenever "claims hinge on publishing-related activity").  It should do so here as well.

13

Plaintiff X Corp. nonetheless contends (at 45) that AB 2655 imposes a duty on platforms that arises from their status as publishers because it "imposes liability" on a platform if that platform's choices regarding whether to remove or label content under AB 2655 "are not made to the State's liking." Not so. As the discussion above about how a platform would apply the law illustrates, AB 2655 does not involve a platform making *editorial choices*—that is, choices about what kinds of content the platform wishes to host or not, *see* OBM at 28. Instead, under AB 2655, a platform assesses whether a piece of content falls within the scope of the statute. It is true that there may be some degree of judgment in determining whether not a particular piece of content meets the statutory requirements. But a platform determining how a statutory definition applies to a specific piece of content is not the same thing as a platform deciding whether or how to moderate that content. The latter question involves a platform's own views on what ideas are worthy of sharing, modifying, or blocking. The former is a question of statutory interpretation akin to those courts routinely address.

Thus, contrary to X Corp.'s contention, AB 2655 does not impose liability on a platform because it "fail[ed] to exercise [its] editorial discretion in ways that the State tries to dictate." X Corp. ABM at 41. After all, under AB 2655, a platform has no editorial discretion to exercise—if reported content is within the scope of AB 2655, then the platform *must* remove or label it. In a suit to enforce AB 2655,

14

the question is not whether a platform "failed to perform" some duty "with due care." *Calise*, 103 F.4th at 740 (quoting *Barnes*, 570 F.3d at 1102-1103). Nor is it whether a platform acted negligently in how it reviewed posts or whether it should have adopted a different scheme of content moderation. *Cf. Bride*, 112 F.4th at 1180. Rather, all that a court must determine is whether reported content comes within the scope of the statute. Such an inquiry is no different than a court determining if a magazine is obscene for children, if a video contains child sex abuse material, if an advertisement is for illegal drugs, or if a book includes classified national secrets. Just as in these other examples, the court's inquiry under AB 2655 has nothing to do with a platform's exercise of editorial discretion, its care in designing and running its platform, or the content moderation choices it makes. AB 2655 therefore does not impose any liability because of a platform's exercise of discretion or editorial judgments.

Finally, plaintiffs and their amici contend that AB 2655 undermines the policy goals of section 230(c)(1). Not so. Plaintiffs and their amici make much of the alleged burdens of AB 2655. But whatever burdens AB 2655 may impose, they are not the kind of burdens that section 230(c)(1) was intended to prevent. As this Court has recognized, Congress intended section 230(c)(1) to address the situation where a platform's decision to voluntarily moderate content could expose it to significant potential liability. *See, e.g.*, *Calise*, 103 F.4th at 739. Section

15

230(c)(1) was meant to remove disincentives for platforms to voluntarily moderate content. *See* OBM at 7-9. But AB 2655 does not create any disincentives to voluntary content moderation. A platform cannot escape from any burdens imposed by AB 2655 by changing whether or how it moderates content; the obligations of AB 2655 are triggered by whether a platform *hosts third-party content*, not by whether or how it *moderates that content*. *See supra* at 10-13; OBM at 26-29.

And plaintiffs and their amici have no response to defendants' arguments about the breadth of their interpretation of section 230(c)(1) and the harm such an interpretation would cause. Indeed, plaintiffs' amici agree that under the interpretation plaintiffs have advanced here, the State would be powerless to regulate *any content online*—including harmful, illegal, or dangerous content such as child sexual abuse material, advertisements for illegal goods or services, or blueprints to 3D print deadly military weapons. *See* Br. of *Amici Curiae* Found. for Individual Rights & Expression & TechFreedom at 17 ("Section 230 limits state regulation of even unprotected, illegal third-party content hosted by platforms."). Plaintiffs' interpretation of section 230(c)(1) functionally creates a regulation-free zone online, one far broader than that enjoyed even by brick-and-mortar distributors such as bookstores. But this Court has been abundantly clear: Section 230(c)(1)'s "immunity is not limitless." *Calise*, 103 F.4th at 739. And the

statute "was not meant to create a lawless no-man's-land on the Internet." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1164 (9th Cir. 2008). Plaintiffs' interpretation of section 230(c)(1) would do precisely that.

At the end of the day, the debate about whether the burdens of AB 2655 are worth the benefits is a policy one. The California Legislature sought to regulate the integrity of elections in a world where technological advancements mean a reasonable person can no longer distinguish a video showing an actual event from a digitally created video of a false event and where false speech travels faster than counter speech can hope to catch. *See* Cal. Elec. Code § 20511. It did so because it thought that the potential harm to electoral integrity posed by the materially deceptive content within the scope of AB 2655 was great enough to justify imposing burdens on large platforms. That is a policy decision that the California Legislature is entitled to make, however much plaintiffs and their amici disagree with it. It is a policy decision that the California Legislature had the authority to make before section 230(c)(1) was passed, consistent with the State's long-standing power to regulate the content disseminated by others within the bounds of the First Amendment. In passing section 230(c)(1), Congress did not strip the California Legislature of the authority to make such a policy decision. Section

17

230(c)(1) does not preempt a law like AB 2655 that seeks to regulate the content available online, not to hold platforms liable for the speech of another.

## B.    AB 2655 is not preempted by section 230(c)(2)(B)

Nor is AB 2655 preempted by section 230(c)(2)(B).  This section provides immunity for "any action taken to enable or make available to information content providers or others the technical means to restrict access" to "obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable" material.  47 U.S.C. § 230(c)(2).  As explained in the defendants' opening brief, AB 2655 does not impose any liability on a provider for any action to make technical means available to users to restrict access to objectionable content.  *See* OBM at 38-40.

In response, plaintiffs repeat the same flawed arguments as the lower court, contending the Reporting Requirement is a "technical means" to "restrict access" to objectionable content.  Not so.  AB 2655's Reporting Requirement is not a "technical means" to restrict access to content; it is simply a way for users to report certain content to the platform to review.  Nor does AB 2655's Labeling or Removal Requirement "restrict access" to objectionable material.  The Labeling Requirement does not impact a user's ability to access any material.  And the Removal Requirement does not restrict access for a user; it removes content for *all* users, regardless of whether each user wishes the content to be removed or not.

18

Removing content altogether is not the same thing as restricting a user's access; restricting access implies the content *is still there* for other users to see.

AB 2655 is not about empowering users or IT managers to block specific objectionable content such as nudity or violence. The statute's Labeling, Reporting, and Removal Requirements are far afield from other technical means to restrict access to content, such as software that blocks an employee from accessing specific websites at work or a program that filters out emails with obscenities. The statute is not within the scope of section 230(c)(2)(B).

## II.   THIS COURT SHOULD NOT AFFIRM ON ALTERNATIVE BASES

Plaintiffs Rumble, The Babylon Bee, Kelly Chang Rickert, and Christopher Kohls (the "Rumble Plaintiffs")—but not plaintiff X Corp.—further argue that this Court should affirm the judgment below on two alternative bases. In accordance with established practice, this Court should not reach the arguments that the lower court declined to address below.

"In general, an appellate court does not decide issues that the trial court did not decide." *Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1110 (9th Cir. 2020); *see also, e.g.*, *Shirk v. U.S. ex rel. Dep't of Interior*, 773 F.3d 999, 1007 (9th Cir. 2014) ("As a federal court of appeals, we must always be mindful that 'we are a court of review, not first view.'" (citation omitted)). Rather, "[a]n appellate court should usually

19

wait for the district court to decide in the first instance." *Planned Parenthood of Greater Washington*, 946 F.3d at 1111. Thus "[w]here an argument has been 'briefed only cursorily before this Court and [was] not ruled on by the district court,' it is normally inappropriate for [this Court] to evaluate the argument in the first instance." *Shirk*, 773 F.3d at 1007 (citation omitted) (first alteration in original). "This practice is rooted in" this Court's belief that it operates "'more effectively as a reviewing court than as a court of first instance.'" *Id.* (citation omitted). Consistent with these established principles, this Court routinely declines to address issues not reached by the trial court below and instead remands for the trial court to address in the first instance. *See, e.g.*, *York County on Behalf of County of York Ret. Fund v. HP, Inc.*, 65 F.4th 459, 468 (9th Cir. 2023); *CoreCivic, Inc. v. Candide Grp., LLP*, 46 F.4th 1136, 1145-1146 (9th Cir. 2022); *MetroPCS California, LLC v. Picker*, 970 F.3d 1106, 1126 (9th Cir. 2020).

In accord with this established practice, this Court should decline to address the alternative bases for affirmance raised by one set of plaintiffs and instead remand for the lower court to address them in the first instance. The alternative arguments plaintiffs have raised, especially the First Amendment argument, involve novel and important questions, weighing strongly in favor remand. *See, e.g.*, *Dep't of Fish & Game v Fed. Subsistence Bd.*, 62 F.4th 1177, 1183 (9th Cir. 2023) (declining to address alternative arguments not resolved below that "raise[d]

20

a question of first impression in this circuit and require[d] resolution of complicated issues of statutory interpretation"); *Davis v. Nordstrom, Inc.*, 775 F.3d 1089, 1095 (9th Cir. 2014) (declining to address alternative arguments not resolved below, even though the record was "fully developed" and the arguments were raised below, because "resolution of the issue [was] not clear"); *Merritt v. Countrywide Fin. Corp.*, 759 F.3d 1023, 1034 (9th Cir. 2014) (declining to address alternative arguments that raised "complex legal questions of first impression in this circuit neither decided by the district court nor fully briefed before this court").

And further factors weigh in favor of remand here. Of note, the State did not appeal the district court's ruling that AB 2655's companion statute, AB 2839, violated the First Amendment—a ruling that would have squarely presented similar First Amendment issues to this Court. Further development in the lower court may assist this Court in addressing the First Amendment issues, particularly given that amendments to AB 2839 are currently pending before the California Legislature. *See* Assembly Bill 502 (2025-2026).

Ultimately, the Rumble Plaintiffs provide no reason for this Court to deviate from its usual practice. *See, e.g.*, *Fair Hous. Council*, 521 F.3d at 1164, 1175 (reversing ruling finding preemption under section 230(c) and remanding for lower court to address other arguments, including constitutional arguments, on remand).

21

Rather than affirm on any alternative grounds that might exist (none do), this Court should remand for the district court to address these arguments in the first instance.

## CONCLUSION

For the foregoing reasons, the lower court's judgment should be reversed.

Dated:  May 11, 2026                              Respectfully submitted,

*s/ Kristin Liska*
_____

Rob Bonta
  *Attorney General of California*
Thomas S. Patterson
  *Senior Assistant Attorney General*
Anya M. Binsacca
  *Supervising Deputy Attorney General*
KRISTIN A. LISKA
  *Deputy Attorney General*

22

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-6138

I am the attorney or self-represented party.

**This brief contains** 4,968 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ x ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Kristin Liska      **Date** May 11, 2026
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**      *Rev. 12/01/22*